THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NATHAN LEVIN, Defendant.

City Magistrate's Court of New York, Borough of Queens, North Queens Traffic Court, December 29, 1952.

No appearance for plaintiff.

*Robert Markewich* for defendant.

McKennee, M. The defendant is charged with speeding twice on February 28, 1952, the first time on the Bronx-Whitestone Bridge, comprising a part of the Whitestone Parkway, and the second time on the Grand Central Parkway, both in the county of Queens, city of New York.

Each of these parkways is made subject to the Rules and Regulations of the Department of Parks of the City of New York* by virtue of section 53 thereof.

The defendant was clocked both times while allegedly traveling at a speed of not less than fifty miles an hour as against an allowed maximum speed of thirty-five miles an hour.

---

* These rules and the other traffic regulations and laws hereinafter referred to are all abbreviated as follows: Rules and Regulations of the Department of Parks of the City of New York — NYCRRDP; the City of New York Traffic Regulations — NYCTR, and the New York State Vehicle and Traffic Law — NYSVTL.

Both charges are based on an alleged violation of subdivision (a) of section 60 of the NYCTR as established by the commissioner of traffic under the authority of chapter 46 of the New York City Charter (as added by Local Laws, 1949, No. 2 of City of New York; renum. and amd. by Local Laws, 1950, No. 27 of City of New York).

The motorcycle officer who apprehended the defendant on the Whitestone Parkway testified on cross-examination that he clocked the defendant for a distance of " Two tenths of a mile, one fifth."

This distance becomes important because the defendant contends that these parkways and the motorcycle police who patrol them are under the jurisdiction of and subject to the rules and regulations of the commissioner of parks. Such seems to be the case, since section 532 of the New York City Charter headed: " *Authority, duties and powers of the commissioner* ", provides: 10. " To have in immediate charge the control and disposition of such members of the police force of the city as may be assigned for duty in the parks, parkways, squares or public places subject to his jurisdiction."

The defendant further contends that the People have the burden of proof to establish that the defendant was speeding for a distance of at least one fourth of a mile, because section 54 of the NYCRRDP specifically incorporates section 56 of the NYSVTL. This latter section decrees that a rate of speed by a motor vehicle on a public highway in excess of fifty miles an hour for a distance of one fourth of a mile, is unlawful, except where a greater speed is permitted by the State Traffic Commission.

The defendant contends, therefore, that since he was clocked for only one fifth of a mile, the People have not met the burden of proof imposed on them, and he is therefore not guilty.

True it is, that the commissioner of parks has incorporated the NYSVTL into his rules and regulations, but it is equally true that he has also incorporated the NYCTR therein through section 54, which reads: " The State Vehicle and Traffic Law and the Traffic Rules and Regulations of the Department of Traffic pursuant to Chapter 46, Section 3.a of the New York City Charter are hereby established as rules and regulations of the Commissioner and shall be in effect in all parks and park-streets with like effect as though set forth herein in full, and the traffic rules and regulations set forth herein are in addition to and supplement the same." (In effect Oct. 1, 1951.)

It should be noted at this point that subdivision b of section 1 of article I, definitions, construction and scope of the NYCRRDP, defines the term " Park ", unless specifically limited, to be deemed to include all parkways under the jurisdiction of the commissioner.

It is apparent from a reading of the NYSVTL and the NYCTR that the former requires clocking for a distance of one fourth of a mile for speeds in excess of fifty miles an hour, as contended by the defendant, while the latter makes no mention of and hence requires no distance, except, possibly, a reasonable distance. (See *People* v. *Mangini,* 194 Misc. 615, 617.)

This being so, it would seem that section 54 of the NYCRRDP is ambiguous and inconsistent, and I so find it.

It would also seem that, in all fairness, the motoring public is entitled to know which of these two different rules is to apply on the parkways of the city. Elimination of the NYSVTL from or some modification with respect thereto as regards distance in section 54 of the NYCRRDP would probably cure the situation.

In *People* v. *Mangini* (*supra*) the defendant sought to escape conviction by contending that section 60 of the NYCTR, to sustain validity, must be construed as incorporating the one fourth of a mile distance requirement found in subdivision 3 of section 56 of the NYSVTL. My learned brother, Magistrate McKean, correctly rejected this theory, pointing out that pursuant to section 1 of chapter 374 of the Laws of 1910, enacting the Highway Law, section 288 stated: " Nothing in this article contained shall impair the validity or effect of any ordinances, regulating the speed of motor vehicles, or of any traffic regulations with regard to the operation of motor vehicles, heretofore or hereafter made, adopted or prescribed pursuant to law in any city of the first class." In other words, New York, being a city of the first class, has the right to make its own traffic regulations, as, of course, the park commissioner also has under the powers granted to him under the City Charter.

In the case at bar, however, the difficulty is that the distance requirement found in the NYSVTL is specifically incorporated in the NYCRRDP " with like effect as though set forth herein in full," and in the same section, 54, as the NYCTR are incorporated, which latter require no distance. That is the difference between these two cases.

The defendant also contends that both of the complaints or informations lodged against him and predicated on section 60 of the NYCTR are improper since his violations, if any, come under the jurisdiction of the commissioner of parks.

Section 532 of the New York City Charter (" *Authority, duties and powers of the commissioner* ") does give him various duties and powers, among which are the control and disposition of the city police assigned to him for duty in and on the parkways, the complete text of which section is quoted hereinbefore.

An examination of the NYCRRDP discloses article IV which deals with traffic on the parkways. It contains two sections dealing with speed. Section 40 prohibits a speed in excess of twenty-five miles an hour, unless in said article specifically otherwise provided, or unless specifically otherwise provided for by traffic signs. Subdivision c of section 53 reads: " *Rate of Speed.* No person operating, driving or propelling any vehicle shall proceed at a greater than maximum or less than minimum speed indicated by signs; but in no case shall such maximum speed exceed thirty-five miles per hour."

The testimony of the officers would seem to contemplate a violation of subdivision c of section 53, rather than a violation of section 60 of the NYCTR.

It will be seen from a reading of the entire article IV of the NYCRRDP that it encompasses various rules and regulations relating to automobile traffic on the city's parkways. For instance section 41 deals with restrictions on commercial vehicles and prohibits vehicles constructed or adapted for or engaged in the carrying of merchandise, trucks and trailers from their use, except under permit. It also prohibits vehicles having any name, insignia, or sign painted or displayed thereon for business or advertising purposes, with certain exceptions. Subdivision b forbids carriers of offensive refuse or heavy materials the use of the parkways. Subdivision c forbids the driving or operating of any omnibus for more than seven passengers, except under a permit. Subdivision d denies the use of the parkways to a hearse or other vehicle carrying the body of a dead person, except by permit. Subdivision e precludes their use by fire department, insurance patrol, police department or to emergency repair wagons of public service corporations or the department of parks, except for emergency work in case of fire, accident, public disaster, impending danger or emergency, in a park. This article also contains eleven other sections (42 to 52 inclusive) stating in detail what one may not

do in and on the parkways. Section 53, specifically covering the two parkways here involved, in addition to the rate of speed subdivision, also has various prohibitions respecting the use of the fourteen designated parkways relating to peddlers, left and U turns, business vehicles, towing, driving lights, etc.

Manifestly a violation of any of these sections and/or subdivisions would require a complaint or information based on the specific provision of NYCRRDP, and not on a comparable section and/or subdivision of the NYCTR, should there be one. Why then should not a speed violation be likewise predicated on a violation of either section 40 or subdivision c of section 53 of the NYCRRDP, as the case may be, when it occurs on the parkways?

It is also significant that the New York City Charter, in setting up the department of traffic, defines the powers and duties of the traffic commissioner to, among others not here noted: " 1063. (a) Make such rules and regulations for the conduct of vehicular and pedestrian traffic in the city, *in the streets, squares and avenues in the city* as he may deem necessary, which rules and regulations shall not become effective until filed with the city clerk and published in the City Record." (Emphasis supplied.)

Nothing about parkways. Had the city desired to include parkways its lawmakers could easily have added that word. Instead, they delegated the power to make traffic regulations for the parkways to the commissioner of parks. (New York City Charter, § 532.)

This jurisdiction of the commissioner of parks as the titular head of the department of parks of the City of New York has not been superseded or excluded by the powers and duties given to the department of traffic of the City of New York. Subdivision c of section 3 of Local Law No. 27 of City of New York of 1950, states: " c. Except as specifically provided herein, nothing contained in this local law shall be deemed to limit, restrict, divest, transfer or supersede the powers or the jurisdiction of any agency as defined in section nine hundred eighty-one of the charter." (Defining, among other things, " agency " as meaning " department.")

In the interest of consistency and logic as well as law I am forced to the inescapable conclusion that in the instant case the complaints or informations should have been based on subdivision c of section 53 of the NYCRRDP. Otherwise why did the lawmaking authorities of the City of New York delegate

power to the commissioner of parks to make such rules and regulations, and why did he so carefully, specifically and fully set them up?

In reaching this conclusion I have also paid heed to the rule of law that a penal statute, and both the NYCRRDP and the NYCTR are in the nature of penal statutes, should be strictly construed in favor of a defendant. " Penal ordinances, like penal statutes, are to be construed strictly, but yet not so as to defeat the obvious intent of the lawmakers." (*City of New York* v. *Fredericks,* 206 N. Y. 618, 623.)

Accordingly, the complaints are dismissed and the defendant is discharged.